IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03347-RBJ-SKC

WYATT T. HANDY, JR.,

Plaintiff,

v.

CITY OF AURORA, et al.

Defendants.

### DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

The Defendants, by their counsel, Charles A. Piekarski and Julia A. Bannon, of the Office

of the City Attorney of Aurora, Colorado, and Ann B. Smith of the office of Vaughan and DeMuro,

hereby submit this Defendants' Motion to Dismiss Plaintiff's Amended Complaint *(Doc. 6)*,

pursuant to Fed. R. Civ. P. 12(b)(6).

## I.    INTRODUCTION

Plaintiff brings this action alleging violations of the Fourth and Fourteenth Amendments

against the named Officers, in their individual and official capacities.  Additionally, Plaintiff brings

a claim for municipal liability against the City of Aurora.  Plaintiff alleges that the claims arise out

of two traffic stops.  In the first stop, the Plaintiff claims the Defendant Officers lacked probable

cause, were rude to him, and ultimately let the Plaintiff leave with a warning.  In the second stop,

the Plaintiff claims the Officer illegally searched his glove box after he was arrested for Driving

Under the Influence and found a handgun.  Plaintiff further alleges that Defendant City is liable

because of deficiencies in training and supervision of the Defendant Officers.  Plaintiff's claims

are subject to dismissal for failure to state a claim upon which relief may be granted.

## II.      STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, the Court will "accept as true 'all well-pleaded factual allegations in the amended complaint.'"  *County of Santa Fe, N.M. v. Public Service Co. of New Mexico*, 311 F.3d 1031, 1034 (10th Cir. 2002) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)).  Factual allegations are "viewed in the light most favorable to the nonmoving party."  *Id*.  A motion pursuant to Fed.R.Civ.P. Rule 12(b)(6) for failure to state a claim "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Id*. at 1034-35.  The Court's function when reviewing a motion to dismiss is to "assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Id*. at 1035.  In undertaking that review, the court first identifies the allegations in the complaint that are legal conclusions, bare assertions, or merely conclusory.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  Next, the court considers the remaining factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id*. at 681.

In this case, Plaintiff is proceeding without legal representation.  Pleadings drafted by *pro se* litigants are held "to less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  A "broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based."  *Id.*  Thus, "in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations."  *Id.*

Finally, the court may take judicial notice of documents in the public record, including state court files, without converting Defendants' motion to dismiss into a motion for summary judgment. *See State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1226 n. 7 (10th Cir. 2008) (taking judicial notice of documents in the public record); *Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008) (considering documents attached to the complaint as well as materials in state court file); *Grynberg v. Koch Gateway Pipeline Co*., 390 F.3d 1276, 1279 n. 1 (10th Cir. 2004) (noting that facts subject to judicial notice may be considered without converting a motion to dismiss into a motion for summary judgment).

### III.    ARGUMENT

**A.    Plaintiff's Fourth and Fourteenth Amendment Claims are barred by the doctrine of Qualified Immunity and the doctrine announced in *Terry v. Ohio*, 392 U.S. 1 (1968).**

The individual Defendants are seeking dismissal of the Plaintiff's claims under the doctrine of qualified immunity.  The qualified immunity doctrine shields governmental officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  "The defense of qualified immunity is designed not only to shield public officials from liability, but also to ensure that erroneous suits do not even go to trial." *Hinton v. City of Elwood, Kan.,* 997 F.2d 774, 779 (10th Cir. 1993).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Medina v. Cram,* 252 F.3d 1124, 1127 (10th Cir. 2001) *(citing Malley v. Briggs,* 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)).

In this case, Plaintiff cannot establish the first prong of the test, i.e., because the Officers in both traffic stops had reasonable suspicion to stop Plaintiff for traffic violations, they were entitled to make brief investigative stops, and Plaintiff cannot establish a violation of his

3

constitutional rights.  *See Doc. 6* at p. 6, ¶15, *see also, Doc. 6* at p. 9, ¶38 (Plaintiff admits in the Complaint that he is not challenging the legality of the December 3, 2017, traffic stop (*id*. at p. 11, ¶ 60), thereby acknowledging the Officer's probable cause in that stop, which will be discussed further below).

The Amended Complaint reveals that, although Defendant Nichols was present at some point during the December 2, 2017, traffic stop, Defendant Thivierge initiated the same. Additionally, during that stop, Officer Thivierge had reasonable suspicion to conduct a traffic stop because the Officer "saw Plaintiff's vehicle swerve," and, as such, conducted a constitutional "Terry stop."  *See Doc. 6* at p. 6, ¶15.  A "Terry stop" is a brief detention of a person by police on reasonable suspicion of involvement in criminal activity but short of probable cause to arrest. *Terry v. Ohio*, 392 U.S. 1 (1968).  There is no bright line rule for determining the length of time that a Terry stop can continue.  As long as the officer diligently pursues the investigation during the detention, the length of the detention can vary and be constitutional.  *United States v. Sharpe*, 470 U.S. 675, 685 (1985); *People v. Rodriguez,* 945 P.2d 1351, 1362 (Colo. 1997).

Plaintiff does not allege that he was requested to step out of his vehicle or that he or his vehicle were searched.  Plaintiff does not allege that the traffic stop was excessively long (noting only that ten to fifteen minutes passed before Defendant Thivierge returned his documents (*Doc. 6* at p. 7, ¶ 21)) and admits that he did not receive a summons (*id*. at p. 7, ¶ 26).  Thus, the contact did not go beyond a permissible Terry stop.  *United States v. Winder*, 557 F.3d 1129, 1133 (10th Cir. 2009).  Accordingly, Defendant Thivierge did not violate any of Plaintiff's constitutional rights.  Plaintiff sets forth no behavior on the part of Defendant Nichols that would plausibly

4

indicate liability, including observing any unconstitutional conduct of Defendant Thivierge for which he failed to intervene.

Although Plaintiff alleges that he was stopped because he was seen "leaving the King's motel, which is a high crime area in the City" and because Defendant Officers "have a practice or custom of stopping blacks coming to or from the King's Motel" (*Doc. 6* at pp. 7-8, ¶ 27), there are no allegations to plausibly indicate race as the motivating factor for the December 2, 2017, traffic stop.  In the case of a plaintiff alleging "a claim of racially selective law enforcement, he 'must demonstrate that the defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose.'"  *Handy v. Fisher*, 2019 WL 1375677 *3 (D. Colo. Mar. 27, 2019) (unpublished decision attached hereto as **EXHIBIT A**), *quoting Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003).[1]

As set forth below, Plaintiff also fails to set forth constitutional violations related to the second traffic stop, which took place shortly after the first.  As Plaintiff is unable to establish a constitutional violation on the part of any Defendant Officers, they are entitled to qualified immunity. [2]

---

[1]     Although Plaintiff alleges race as a reason for the December 2, 2017, traffic stop, he does not assert an equal protection claim against Defendant Officers.

[2]     Although Plaintiff claims that, during the first traffic stop, the Defendant Officers "became irate and began yelling at Plaintiff, calling him derogatory names . . . and threatening Plaintiff with adverse action" (*Doc. 6* at p. 7, ¶ 24), verbal threats and harassment do not rise to the level of a constitutional violation.  *See Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992).  Nor do allegations of policy violations (*Doc. 6* at pp. 6-7, ¶ 18; p. 11, ¶¶ 55, 57) state claims pursuant to 42 U.S.C. § 1983.  *See Davis v. Scherer*, 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision.").

Furthermore, once the defense of qualified immunity is raised, the burden shifts to the plaintiff to demonstrate whether a constitutional violation occurred, and whether the violated right was "clearly established" at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 230-32 (2009). In determining whether the right was "clearly established," the Court must assess whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz,* 533 U.S. 194, 202 (2001). Where, as here, no constitutional violation is established, the court does not need to reach this second prong of the test, because defendants are entitled to qualified immunity if the plaintiff fails to carry either part of this heavy two-part burden. *See Albright v. Rodriguez,* 51 F.3d 1531, 1535 (10th Cir. 1995). The material facts of this case demonstrate that Plaintiff is unable to meet this heavy burden on any of his claims.

**B.      Plaintiff's Fourth and Fourteenth Amendment Claims are barred by the doctrine announced in *Heck v. Humphrey*, 512 U.S. 477 (1994).**

In the present case, the Plaintiff admits that he was arrested, charged, and ultimately convicted of Driving Under the Influence, and Possession of a Weapon by a Previous Offender in his second traffic stop on December 3, 2017. *See Doc. 6* at p. 11, ¶59, s*ee also* **EXHIBIT B** – Judgment of Conviction. Plaintiff contends that he is not challenging the legality of the traffic stop, meaning Plaintiff does not challenge the probable cause for that stop. *See Doc. 6* at p. 11, ¶60. Therefore, the search of the glovebox in the Plaintiff's vehicle was an inventory search "based on probable cause when that vehicle is lawfully impounded by law enforcement officials." *People v. Vaughn*, 2014 CO 71, ¶ 14, 334 P.3d 226, 230.

The United States Supreme Court has held that a claim for damages which would necessarily call into question the integrity of a plaintiff's prior criminal conviction is not cognizable under 42 U.S.C. § 1983. *Heck*, 512 U.S. at 487. Therefore, if a court finds that a verdict favorable

6

to a § 1983 plaintiff would "necessarily imply the invalidity of [a plaintiff's] conviction or sentence," the plaintiff's claim must be dismissed. *Id.* In essence, the *Heck* Court ruled that the principle of collateral estoppel or issue preclusion applies to § 1983 damages actions which necessarily require the plaintiff to prove the unlawfulness of his criminal conviction based on the same underlying facts. *Ballard v. Burton*, 444 F.3d 391, 397 (5th Cir. 2006).

Plaintiff's claims surrounding the validity of the search of the glovebox in his vehicle are subject to dismissal. Plaintiff cannot prove that such action on the part of the Defendants amounted to a constitutional violation. Plaintiff chose to plead guilty to the charge of DUI and Possession of a Weapon by a Previous Offender, with assistance of counsel, rather than going to trial. *See Doc. 6* at p. 11, ¶59, *See also* Exhibit B – Judgment of Conviction. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. *United States v. Salazar*, 323 F.3d 852, 856 (10th Cir. 2003) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). As a result, even assuming, arguendo, that the glovebox search was improperly executed, by pleading guilty to Possession of a Weapon by a Previous Offender for being in possession of the weapon discovered in the glove box, Plaintiff waived the right to challenge the constitutionality of that search. Furthermore, as a result of his guilty plea, the gun seized during the search was never used against Plaintiff at trial, and he has no cause to complain of such violation now. As a result, the Plaintiff's claims relating to the glovebox search must fail.[3]

---

[3]     Defendants note that, given Plaintiff's conviction, the search of the glovebox was also legal as the Defendant Officers had reason to believe that the vehicle contained "evidence relevant to the crime of arrest." *Arizona v. Gant*, 556 U.S. 332, 343 (2009).

## C.      Municipal Liability

Plaintiff is required to identify a municipal "policy" or "custom" that caused his injury, in order to state a claim against the City.  Because Plaintiff only makes conclusory allegations as to the policy or custom that caused his injury, this Court should dismiss the *Monell* claim against the City.  *See Erikson v. Pawnee County Bd. of County Com'rs*, 263 F.3d 1151, 1154 (10th Cir. 2001) ("Plaintiff's conclusory allegation is insufficient to survive defendants' motion to dismiss.").

Plaintiff has the burden to allege facts subjecting the City to liability because there is no *respondeat superior* liability under Section 1983.  *Board of the County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403 (1997).  A municipality cannot be held liable under Section 1983 solely because it employs a tortfeasor.  *See e.g.*, *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 692 (1978).  To establish *Monell* liability, a plaintiff must show "deliberate action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights."  *Bryan County*, 520 U.S. at 403; *see also Aguilar v. Colorado State Penitentiary*, 656 Fed. Appx. 400, 403 (10th Cir. 2016) (unpublished) ("[T]o hold the entity liable, the plaintiff must identify an official policy or a custom that is the 'direct cause' or 'moving force' behind the constitutional violations.").  A plaintiff must also show that "the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury."  *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 769 (10th Cir. 2013).  "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."  *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).

8

The Tenth Circuit has set forth five forms of municipal policies or customs.  First, a policy or custom may be a "formal regulation or policy statement."  *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010)).  Next, it may take the form of "an informal custom 'amount[ing] to' a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.'"  *Id.*  It may also take the form of "decisions of employees with final policymaking authority" or through "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval."  *Id.*  Finally, it may take the form of a "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."  *Id.*

In the present case, Plaintiff does not allege any formal regulation or policy statement from the City that authorizes violations of the Fourth or the Fourteenth Amendments.  Rather, Plaintiff alleges that municipal liability should be imposed because of an informal policy, custom, or practice and because of a failure to adequately train and supervise.

       1.       <u>Informal Policy, Custom, or Practice</u>

Plaintiff makes conclusory statements alleging that the "the City of Aurora, and the Aurora Police Department, have a lengthy and well-documented history of conducting unlawful searches and seizures."  *See Doc. 6* at p. 17, ¶89.  Such allegations are insufficient for *Monell* liability in that they are entirely conclusory and do not identify a policy or custom of the City which led to a constitutional violation.  *See Granato v. City and County of Denver*, 2011 WL 3820730, *8 (D.

9

Colo. 2011) ("The cases make clear that it is facts, not conclusions, that must be pled; 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions,' including 'legal conclusion[s] couched as a factual allegation.'" (quoting *Iqbal*, 566 U.S. at 1949-50)).

Absent an official policy, a municipality may be held liable if the alleged constitutional violation is "so permanent and well settled as to constitute a custom or usage with the force of law." *Murrell v. School Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1249 (10th Cir. 1999) (citation omitted).

A custom is "an act that, although not formally approved by an appropriate decision maker, has such widespread practice as to have the force of law." *Carney v. City and County of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008).  To establish a custom, the actions of municipal employees must be "continuing, persistent and widespread." *Id.*  (citing *Gates v. Unified School Dist. No. 449 of Leavenworth County, Kan.*, 996 F.2d 1035, 1041 (10th Cir. 1993)).  To establish liability on the basis of custom or practice, a plaintiff must sufficiently allege:  "(1) The existence of a continuing, persistent and widespread practice of unconstitutional misconduct by the [City's] employees; (2) Deliberate indifference to or tacit approval of such misconduct by the [City's] policymaking officials . . . after notice to the officials of that particular misconduct; and (3) That the plaintiff was injured by virtue of the unconstitutional acts pursuant to the . . . custom and that the custom was the moving force behind the unconstitutional acts." *Gates*, 996 F.2d at 1041.

To show the existence of a continuing, persistent and widespread custom, a plaintiff must "offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way." *Carney*, 534 F.3d at 1274; *see also Estate of Valverde by and through Padilla*

*v. Dodge*, 2017 WL 3530282, \*4 (D. Colo. 2017); *see also Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005) (a plaintiff may show a persistent and widespread practice of constitutional deprivations by showing "other incidents involving similar facts.").

Plaintiff's Amended Complaint alleges three other incidents in which individuals have claims against the City of Aurora alleging constitutional violations. *See Doc. 6* at p. 18, ¶100.  All three of the cases cited by Plaintiff involve claims that are ongoing.  Plaintiff does not point to any instance that has resulted in a finding of liability or a judgment against the City or any of its Officers.

A few isolated incidents will not provide sufficient support for relief under Section 1983 against a municipality.  *See e.g., Handy v. Russell*, 2012 WL 5869161, \*2 (D. Colo. 2012) (plaintiff "cannot state a claim for relief under § 1983 against a municipality merely by pointing to isolated incidents."); *Jean-Laurent v. Wilkerson*, 461 Fed.Appx. 18, 22-23 (2nd Cir. 2012) (plaintiff's "citation to various lawsuits involving inmate claims for excessive use of force is not probative of the existence of any underlying policy that could be relevant here."); *Taylor v. Indianapolis Metropolitan Police Dept.*, 2011 WL 2605654, \*5 (S.D. Ind. 2011) ("Plaintiffs' evidence of prior lawsuits does not show the requisite 'custom or usage' of excessive force and . . . only invites the Court to speculate."); *Davis v. Clearlake Police Dep't*, 2008 WL 4104344, \*8 (N.D. Cal. 2008) (the filing of five federal lawsuits against a city is insufficient to show policy or practice of racial discrimination).

The cases cited by Plaintiff are insufficient to support an inference of widespread custom because none of them have resulted in adjudication with liability.  *See Tieman v. City of Newburgh*, 2015 WL 1379652, \*17 (S.D.N.Y. 2015).  Lawsuits filed without a resulting adjudication of

liability cannot suggest a persistent and widespread custom. *Walker v. City of New York*, 2014 WL 1259618, \*3 (S.D.N.Y. 2014) (holding that allegations of ten similar complaints filed against New York City in the ten preceding years was insufficient to state a claim because the "paltry number of complaints (none resulting in an adjudication of liability) . . . hardly suggests the frequency or pervasiveness of the purported custom that is required to state a *Monell* claim."); *see also Collins v. City of New* York, 923 F.Supp.2d 462, 479 (E.D.N.Y. 2013) (holding that a litany of cases cited in plaintiff's complaint were insufficient to allege a proper *Monell* claim because many involved settlements without admissions of liability and unproven allegations); *see also Strauss v. City of Chicago*, 760 F.2d 765, 768-69 (7th Cir. 1985) ("People may file a complaint, for many reasons . . . [t]hat they filed complaints does not indicate that the policies that [plaintiff] alleges exist do in fact exist and did contribute to his injury.").

Furthermore, Plaintiff fails to allege sufficient facts to support a finding that the City acted with deliberate indifference after notice of the alleged constitutional violations.   Deliberate indifference "is a stringent standard of fault requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan County*, 520 U.S. at 410.  Beyond conclusory allegations, Plaintiff fails to demonstrate how the mere filing of claims and lawsuits, without any finding of liability or wrongdoing on the part of the City or any of its employees, would put the City on notice of any known or obvious consequences of any particular action.  Therefore, Plaintiff has failed to allege sufficient facts to support a claim of municipal liability based on an informal policy or custom.

2.      Failure to Train and Supervise

In limited circumstances, a municipality may be liable under §1983 for a failure to train. *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989).   "A municipality's culpability for a

deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822-823 (1985) (A "policy" of "inadequate training" . . . "is far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*."). Thus, a municipality's failure to train its employees may serve as the basis for §1983 liability only where that failure amounts to deliberate indifference to the rights of citizens. *City of Canton*, 489 U.S. at 388-89. A less stringent standard of fault for a failure-to-train claim "would result in de facto respondeat superior liability on municipalities . . . ." *Id.* at 392. Allegations of failure to supervise are assessed under the same standard. *Whitewater v. Goss*, 192 Fed. Appx. 794, 797 (10th Cir. 2006). Furthermore, "[r]arely if ever is 'the failure of a police department to discipline in a specific instance . . . an adequate basis for municipal liability under *Monell*.'" *Schneider*, 717 F.3d at 777 (quoting *Butler v. City of Norman*, 992 F.2d 1053, 1056 (10th Cir. 1993)).

Deliberate indifference involves an obvious need for more or different training where the inadequacy of training is likely to result in the violation of constitutional rights. *City of Canton*, 489 U.S. at 390. "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney*, 143 F.3d at 1307. "Without notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program causing constitutional violations." *Connick*, 131 S. Ct. at 1360. Additionally, the identified deficiency must be closely related to the plaintiff's actual injury. *City of Canton*, 489 U.S. at 385. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the

city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id*. at 390-91 (internal citation omitted).

Plaintiff has failed to allege a specific deficiency in the City's training or supervision, closely related to Plaintiff's injury. *See id*. Instead, Plaintiff cites a number of cases where individuals were allegedly mistreated by Aurora officers. Without any supporting factual allegations, Plaintiff's Complaint concludes that this mistreatment was the result of the City's failure to properly train and supervise its officers. Plaintiff has not pled sufficient factual allegations to support such a finding.

Plaintiff has also failed to plead sufficient factual support for the claim that the City had actual or constructive notice that its allegedly improper training was deficient. Plaintiff alleges that receipt of lawsuits from a handful of other plaintiffs serves to put the City on notice of an allegedly-deficient training program. However, the unsubstantiated allegations contained in complaints unrelated to the present matter are insufficient to place the City on notice of any alleged training deficiency. Furthermore, none of these cited complaints have resulted in a judgment against the City or a finding of liability against the City or any of its employees. Further, as all of these complaints are presently pending, Plaintiff fails to allege any facts to support the conclusion that the City has failed to take action on those complaints or has failed to investigate the allegations raised in each. The mere filing of a complaint does not indicate the veracity of the allegations raised, which can only be determined through subsequent investigation. Plaintiff alleges no facts to support a conclusion that the City has not engaged in such an investigation. As a result of the inadequate factual allegations found in the Complaint, Plaintiff's claim against the City should be dismissed.

## IV. CONCLUSION

WHEREFORE, for the reasons set forth above, Defendants respectfully request that this

Court enter an Order dismissing Plaintiff's claims as set forth above, with prejudice, and for such

other and further relief as the Court deems just and proper, including attorney fees pursuant to

C.R.S. § 13-17-201.

Respectfully submitted this 31st day of July, 2020.

s/ *Charles A. Piekarski*
Charles A. Piekarski
Julia A. Bannon
OFFICE OF THE CITY ATTORNEY
Aurora Municipal Center, Suite 5300
15151 East Alameda Parkway
Aurora, Colorado  80012
Telephone:  (303) 739-7030
E-mail:  cpiekars@auroragov.org
         jbannon@auroragov.org
ATTORNEYS FOR DEFENDANT CITY
OF AURORA

s/ *Ann B. Smith*
Ann B. Smith
VAUGHAN & DeMURO
111 South Tejon, Suite 545
Colorado Springs, CO  80903
Telephone:  (719) 578-5500
Facsimile:  (719) 578-5504
E-mail:  asmith@vaughandemuro.com
ATTORNEY FOR DEFENDANT
OFFICERS IN THEIR INDIVIDUAL
CAPACITIES

## *CERTIFICATE OF SERVICE*

I hereby certify that on July 31, 2020, I electronically filed the foregoing *DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Ann B. Smith, Esq. – asmith@vaughandemuro.com

and I hereby certify that I have mailed or served the document or paper to the following non-CM/ECF participants in the manner (mail, hand delivery, etc.) indicated by the non-participant's name:

Wyatt T. Handy, Jr.                    *(MAIL AND E-MAIL)*
PO Box 221531
Denver, CO  80222
w.t.handyjr@gmail.com

s/ *Cindy Selden*
Cindy Selden