# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.  19-CV 03347-RBJ-SKC

WYATT T. HANDY JR.,

      Plaintiff,

v.

CITY OF AURORA, et. al.,

      Defendant.

**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
08/18/2020
**JEFFREY P. COLWELL, CLERK**

---

## PLAINTIFFS RESPONSE TO DEFENDANTS' [29] MOTION TO DISMISS

---

COMES NOW, Wyatt T. Handy Jr., Plaintiff pro se, submit the following Response to Defendants [29] Motion to Dismiss. In support of this Response, Plaintiff state the following:

## I. INTRODUCTION

Plaintiff brings this action alleging violations of his constitutional rights under 28 U.S.C. § 1983, against Defendants Anthony Nichols, Christopher Thivierge, Josiah Coe, Christopher Yarborough, and Alex Sotelo (collectively "Defendants"), in their individual capacities. Additionally, Plaintiff brings a claim for municipal liability against Defendants City of Aurora (herein "Aurora"). These claims arise out of two traffic stops, by Defendants, and encompass an

1

unlawful seizure of the Plaintiff during the first traffic stop, and an unlawful search of Plaintiff's vehicle during the second traffic stop.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and view those allegations in the light most favorable to the nonmoving party. See Stidham v. Peace Officer Standards & Training, 265 F.3d 1144, 1149 (10th Cir. 2001). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." Shero v. City of Grove, 510 F.3d 1196, 1200 (10th Cir. 2007).

## III. ARGUMENT

### A. Plaintiff's Fourth and Fourteenth Amendment Claims are not Barred by Qualified Immunity

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar, as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 396 (1982). Upon a public official's assertion of a qualified immunity defense, plaintiff bears a "heavy

2

burden" under a two-pronged analysis. Buck v. City of Albuquerque, 549 F. 3d 1269, 1277 (10th Cir. 2008). Under the first prong, the plaintiff must "establish that the defendant's actions violated a statutory or constitutional right." Smith v. Cochran, 339 F.3d 1205, 1211 (10th Cir. 2003). Under the second prong, the plaintiff must establish that the right at issue was "clearly established at the time of the defendants alleged misconduct." Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 273 (2001). The Supreme Court has held that "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed in light of the circumstances in the particular case at hand." Pearson v. Callahan, 129 S. Ct. at 818.

**B. First Traffic Stop**

The Fourth Amendment protects citizens from "unreasonable searches and seizures" conducted by either State or Federal government officials. United States v. White, 584 F.3d 935, 944 (10th Cir. 2009). Relevant to the Fourth Amendment inquiry, "the Supreme Court has recognized three types of police-citizen encounters: (1) consensual encounters which do not implicate the Fourth Amendment; (2) investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity; and (3) arrest, the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause."

Regarding the first traffic stop, Plaintiff alleged, Defendant Thivierge, did not have reasonable suspicion to stop him, because he did not commit any traffic violations. Defendant

Thivierge, wasn't entitled to make an investigative stop. Therefore, Plaintiff can establish a violation of his constitutional rights. Doc. No. 6 pp. 8, 25, 26, & 28. Plaintiff alleged, after leaving the motel, Defendant Thivierge followed him. Id. at 8. Plaintiff alleged, he did not "swerve." Id. at 25. Plaintiff alleged, he wasn't issued a traffic ticket or summons, which support he didn't violate any traffic laws. Id. at 26. Plaintiff alleged, he was stopped, because Defendant Thivierge, seen him leaving a motel, in a high crime area. Id. at 27. Plaintiff alleged, he had a passenger, who could come forth with evidence, that he didn't commit any traffic offenses. Id. at 6; Shero, 510 F.3d at 1200.

Plaintiff alleged, Defendant Nichols was present during the unconstitutional detainment, and failed to intervene. Doc. No. 6 pp. 11, 12, 16, 19, 22, 23, & 24. Plaintiff alleged, Defendant Thivierge, did not have reasonable suspicion to stop him, because he did not "swerve" in the lane, his vehicle was in. Id. Defendant Thivierge stated, he seen Plaintiff "swerve" one time in his lane, not into the lanes of other vehicles, (body camera footage captured this exchange). Id. Plaintiff assert, even if true, and it's not, a "swerve" doesn't constitute a crime, or a traffic violation, under Colorado law. See C.R.S. Title 42-Vehicles and Traffic.

Defendants argue, the detention only lasted 15 minutes, that Plaintiff wasn't pulled out his car or received a summons, and that the contact did not go beyond a permissible Terry stop. However, the stop was pretextual, conducted without a legal basis, and Defendant Thivierge took Plaintiff's license. This constitute an illegal search and seizure. United States v. Lambert, 46 F.3d 1064, 1068 (10th Cir. 1995). The Fourth and Fourteenth Amendments are implicated in this detainment, because stopping an automobile, detaining its occupants, and retaining their license, constitute a "seizure" within the meaning of those Amendments, even though the purpose of the

stop is limited and the resulting detention quite brief. United States v. Martinez-Fuerte, 428 U.S. 543, 556-558 (1976); United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975); Terry v. Ohio, 392 U.S. 1, 16 (1968). The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of "reasonableness" upon the exercise of discretion by government officials, including law enforcement agents, in order to safeguard the privacy and security of individuals against arbitrary invasions. Delaware v. Prouse, 440 U.S. 648 at 654-655 (1979); Marshall v. Barlow's, Inc., 436 U.S. 307, 312, (1978), quoting Camara v. Municipal Court, 387 U.S. 523, 528 (1967). Thus, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests. Implemented in this manner, the reasonableness standard usually requires, at a minimum, that the facts upon which an intrusion is based be capable of measurement against "an objective standard," whether this be probable cause or a less stringent test. In those situations in which the balance of interests precludes insistence upon "some quantum of individualized suspicion," other safeguards are generally relied upon to assure that the individual's reasonable expectation of privacy is not "subject to the discretion of the official in the field." Camara v. Municipal Court, 387 U.S., at 532; Marshall v. Barlow's, Inc., 436 U.S. at 320-321; United States v. United States District Court, 407 U.S. 297, 322-323 (1972). Accordingly, Defendant Thivierge didn't have a articuable basis for "reasonable suspicion" to stop and detain Plaintiff and his occupant, because Plaintiff didn't commit any crimes or traffic violations. Delaware v. Prouse, 440 U.S. 648 (1979). Therefore, Defendants Motion to Dismiss, should be denied, regarding the first traffic stop.

**C. Second Traffic Stop**

Plaintiff's Fourth and Fourteenth Amendment claims are not barred by the doctrine announced in Heck v. Humphrey, 512 U.S. 477 (1994). Warrantless searches, as well as searches conducted pursuant to a warrant, must be reasonable to satisfy constitutional requirements. A warrantless search and any resulting seizure, are presumed unreasonable, unless the search falls within certain recognized exceptions to the warrant requirement. Horton v. California, 496 U.S. 128 (1990); People v. Hauseman, 900 P.2d 74 (Colo.1995). One such exception, is an inventory search of a vehicle lawfully impounded by law enforcement officials, if conducted pursuant to routine administrative procedures. Colorado v. Bertine, 479 U.S. 367 (1987); People v. Hauseman, supra. However, the fact that officers may have conducted an inventory search in accordance with procedures does not, of itself, necessarily mean that the inventory search was reasonable. People v. Hauseman, supra.

Plaintiff, has set forth sufficient factual allegations, that Defendants Nichols, Coe, Yarborough, and Sotelo, illegally searched and seized his vehicle, in violation of the Fourth and Fourteenth Amendments, and Standardized Aurora Police Department (herein "APD"), Policies and Procedures, regarding inventory searches. The facts unequivocally show, the inventory search of the vehicle, was investigative and a pretext to search Plaintiff's vehicle to detect drugs. An inventory search conducted in accordance with an established, standardized policy is generally considered reasonable in the absence of evidence that the officers conducted a search with impermissible motives—i.e., "in bad faith or for the sole purpose of investigation." Pineda

v. People, 230 P.3d 1181, 1185 (Colo. 2010) (quoting Bertine, 479 U.S. at 373). Defendant Nichols was involved in the first stop of Plaintiff, a couple hours prior to the second stop. Doc. No. 6 pp. 28-29. From the start of the encounter, Defendant Nichols requested consent to search the vehicle. Id. pp. 44-46. During the search of Plaintiff's vehicle, body camera footage capture Defendants discuss how to find drug's in the car. Id. 53-54. When Defendants Nichols decided to arrest Plaintiff and tow the vehicle, he did not propose to Plaintiff, the option of releasing his vehicle, to one of his passengers. Id. at 57; APD Directive 08.16, attached as Exhibit 1 at p. 2. Defendant Nichols report confirms, that he never propose to Plaintiff, the option of releasing his vehicle, to one of his passengers. General Offense Report, attached as Exhibit 2. The option to release, is available for vehicles on public and private property. Exhibit 1. Defendants failure to propose this option to Plaintiff, violates the Fourth and Fourteenth Amendments, and APD policies and procedures on inventory searches. Pineda, 230 P.3d at 1185; Bertine, 479 U.S. at 373; see also Virgil v. Superior Court, 268 Cal.App.2d 127 (Cal. Ct. App. 1968).

Inventory searches are a police caretaking function and must be a disinterested cataloguing of a car or home's contents; an inventory search cannot be motivated by the desire to search for evidence. South Dakota v. Opperman, 428 U.S. 364 (1976). Such searches are frequently conducted on vehicles when police lack reasonable suspicion or probable cause to search a car. There must be standard law enforcement department policies in place to justify an inventory search and the policies must preclude use of the inventory search as a subterfuge to conduct an impermissible search for evidence. Florida v. Wells, 495 U.S. 1 (1990); Colorado v. Bertine, 479 U.S. 367 (1987). The law is clearly established, if licensed passengers are available, an arrestee should have the option to release the vehicle. People v. Grenier, 200 P.3d 1062, 1070 (Colo.

App. 2008); Milligan, 77 P.3d at 777; Gee, 33 P.3d at 1255. Therefore, the search of Plaintiff's vehicle violated his Fourth and Fourteenth Amendment rights.

The Tenth Circuit has held, that footnote seven exempts illegal search and seizure damages claims from Heck's favorable termination requirement. Beck v. City of Muskogee Police Dep't, 195 F.3d 553, 559 n.4 (10th Cir. 1999)(advocating general exception approach)( Several cases have held that whether a plaintiff's illegal arrest claim is affected by Heck depends on whether evidence obtained as a product of the arrest is used at trial. Covington, 171 F.3d at 123 ("[W]here the only evidence for conviction was obtained pursuant to an arrest, recovery in a civil case based on false arrest would necessarily impugn any conviction resulting from the use of that evidence."); Mackey v. Dickson, 47 F.3d 744, 746 (5th Cir. 1995) ("[I]f he is convicted and evidence is presented by the prosecution at his criminal trial which is a direct or indirect product of one or more of his arrests, then his section 1983 damage claims challenging the validity of his arrests would appear to undermine the validity of his conviction and hence be barred by Heck."). We generally disagree with the holdings in these cases because they run counter to Heck's explanation that use of illegally obtained evidence does not, for a variety of reasons, necessarily imply an unlawful conviction. See Heck, 512 U.S. at 487 n. 7. Moreover, we are not faced with the rare situation posited by Covington where all evidence was obtained as a result of an illegal arrest).

Several Circuit Court's have held, that footnote seven exempts illegal search and seizure damages claims from Heck's favorable termination requirement. See Copus v. City of Edgerton, 151 F.3d 646, 648 (7th Cir. 1998) (advocating general exception approach); also see Simmons v. O'Brien, 77 F.3d 1093, 1095 (8th Cir. 1996) (applying footnote seven to analyze § 1983 claim

for coerced confession); See Datz v. Kilgore, 51 F.3d 252, 25 n.1 (11th Cir. 1995) (adopting general exception approach)(Datz sued police officers for damages, alleging an illegal search despite the state criminal trial court's determination that either Datz consented to the search in question or the police officers had probable cause to conduct the search. Id. at 253. The court's opinion granted Heck only a passing footnote in concluding that illegal search claims always could proceed: "Heck v. Humphrey is no bar to Datz' civil action because, even if the pertinent search did violate the Federal Constitution, Datz' conviction might still be valid considering such doctrines as inevitable discovery, independent source, and harmless error." Id. at 253 n.1(citation omitted).

Plaintiff's claim regarding the illegal inventory search, doesn't challenge the validity of his convictions, therefore, his claims aren't subject to dismissal. Muskogee Police Dep't, 195 F.3d at 559 n.4; Laurino v. Tate, 220 F.3d 1213 (10th Cir. 2000)(suspects proof that police lacked probable cause doesn't necessarily imply invalidity of conviction). Plaintiff has shown that the inventory search was conducted in "bad faith" for investigative purposes, amounting to a violation of his clearly established constitutional rights. Colorado v. Bertine, 479 U.S. 367 (1987). In footnote 3, of Defendants Motion, they claim, that the purpose of the search, was to find evidence relevant to his arrest. However, Defendant Nichols police report, shows that the search was conducted as an inventory search, because the vehicle was being towed. Exhibit 2 at p. 2. As a result, Plaintiff's claim regarding the illegal inventory search should prevail.


**D. Plaintiff Has Set Fourth Sufficient Factual Allegations to State a Claim for Municipal Liability Under the Custom and Practice and Failure to Train and Supervise Theories**

Municipalities can incur liability for their employees' constitutional torts only if those torts resulted from a municipal policy or custom. Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir. 1993). Five potential sources exist for a municipal policy or custom: 1) a formal regulation or policy statement; 2) a informal custom amounting to a "widespread practice that, although not authorized by a written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law;" 3) the decision of a municipal employee with final policymaking authority; 4) a policymaker's ratification of a subordinate employee's action; and 5) a failure to train or supervise employees. Bryson v. City of Oklahoma City, 627 F.3d 784, 788 (10th Cir. 2010).

Pleading a municipal policy, custom, or practice is like pleading the breach element of negligence -- which is also ultimately a question of fact for the jury. With informal, unwritten policies, customs, or practices, the plaintiff can plead either a pattern of multiple similar instances of misconduct -- no set number is required, and the more unique the misconduct is, and the more similar the incidents are to one another, the smaller the required number will be to render the alleged policy plausible -- or use other evidence, such as a police officers' statements attesting to the policy's existence. The Tenth Circuit has not explicitly held that to be pleading requirements, but they have implied that district courts should analyze policies, practices, or customs under Monell as "legal conclusions" at the pleading stage - which must evidence factual support, rather than conclusorily alleged -- and not "facts" in and of themselves, to be taken as true at face value. Martinez v. Winner, 771 F.2d 424, 443-44 (10th Cir. 1985).

Plaintiff has set forth sufficient factual allegations, that Aurora has a informal custom or practice, amounting to a "widespread practice, that is so permanent and well-settled, as to constitute a custom or usage with the force of law," which allows it's police officers, to effectuate pretextual traffic stops, based on race, and allows it's police officers to conduct illegal searches and seizures, without reasonable suspension, probable cause, or any other legal basis.

Plaintiff alleged, he filed several administrative complaints, regarding the incidents, with the APD Internal Affairs Bureau (herein "IA"), and in response, IA stated, "the officers had done nothing wrong." Doc. No. 6 pp. 87-89. Plaintiff, provided demographic data of Aurora, and statistical data of traffic stops by APD, which show African-Americans are twice as likely to being stopped in Aurora, then Whites, who make up over half of the city's population. Doc. No. 6 pp. 90-98. Plaintiff provided, multiple instances of similar conduct by APD officers, to support the allegations, that Aurora, has a "widespread" custom or practice, that allow it's police officers, to make pretextual traffic stops, based on race, and conduct illegal searches and seizures, without reasonable suspension, probable cause, or any other legal basis.

Defendants argue, Plaintiff only use three instances of similar conduct; that none of the incidents been substantiated; and that a few incidents isn't sufficient to support relief under § 1983 municipal liability. However, Plaintiff's allegations demonstrate approximately 15 recent instances of this conduct. If the Court review the complaints, briefs, testimony, etc., in Diallo v. Milligan, #18-cv-02898, Pittman v. Palacio, 19-cv-01947, Pittman v. City of Aurora, 19-cv-02209, and Falls v. City of Aurora, 19-cv-03722, the court will note, that the factual allegations, at this stage in the proceedings, taken as true, provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." Shero, 510 F.3d at 1200.

11

Plaintiff cited Diallo, because in Diallo, like this case, Officer Milligan, refused to explore the option, of releasing Diallo's vehicle to his friends, in violation of APD policies, and searched the vehicle anyway, without Diallo's consent, or any other legal basis, and planted drugs during the search. Diallo is pertinent to this case, because Defendant Sotelo, who's involved in this case, was a trainee, during the Diallo incident, being trained by Officer Milligan. The Diallo case infers, if nothing else, that Aurora train it's officers, to conduct illegal searches and seizures, no matter the circumstances, or condones in it. These officers were never disciplined. Doc. No. 6 pp. 100-105; Diallo v. Milligan, #18-cv-02898. Plaintiff cited Pittman case, because the Pittman record, elaborate on Aurora's illegal search and seizure customs and practices. Mr. Pittman, was subjected to several pretextual traffic stops, and illegal search and seizures. Doc. No. 6 pp. 106-107. In Mr. Pittman's complaints and filings, he reference approximately 15 instances, of similar APD traffic stops, that show Aurora's illegal search and seizure customs and practices. Mr. Pittman cited the following cases: Diallo v. Milligan 18-cv-02898, Brown v. McDermott 19-cv-01108, James Lawrence (January 31, 2018), Pittman v. City of Aurora 19-cv-02209, and Falls v. City of Aurora 19-cv-03722. These cases, like Plaintiff's, involve illegal searches for drugs or guns.

In Brown, an expert witness, in police procedure, Dan Montgomery, determined that Officer McDermott's actions "were inappropriate and not based on any reasonable suspicion." Mr. Montgomery also reviewed fourteen separate police reports regarding searches conducted by Officer McDermott in 2016 and 2017. Mr. Montgomery determined that Officer McDermott "did not collect objective, articulable facts necessary for, and did not have sufficient reasonable suspicion to conduct body pat down searches for weapons" in ten of the fourteen cases he

reviewed. Mr. Montgomery also noted that "[e]ach of these police reports had to be reviewed by a supervisor and based on what he reviewed, they were all approved, thus condoning Officer McDermott's actions and enabling him to continue his performance improprieties." Id.

In Pittman, Lieutenant Chad Cerinich of APD IA, reviewed the incident. Although Lieutenant Cerinich could clearly hear Officer Dasko say twice on his body camera that he was searching Mr. Pittman based on his criminal history and gang affiliation, Lieutenant Cerinich nevertheless determined that the actions of Officers Dasko, Burke, Veith, and Palacio involving Mr. Pittman on January 19, 2019 were lawful and that no disciplinary action, training, or additional supervision was necessary. Lieutenant Cerinich not only disagreed with the conclusion reached by Assistant City Attorneys Wood and Koumantakis, but even wrote an email to Deputy City Attorney Julie Heckman (head of the Criminal Division of the City Attorney's Office), advising her of "[his] disagreement with the decision of her office to dismiss the charges against [Mr.] Pittman." Id.

The Lawrence and Falls cases, collectively involved four instances of the alleged illegal search and seizure campaign, by APD officers. In all the above cases, like Plaintiff's case, the police where looking for drugs and guns, and were going to do it by any means necessary, including conducting illegal searches and seizures. Id.

In both traffic stops involving Plaintiff, the stops were dispatched as a priority two and one call. Doc. No. 6 pp. 17-18 & 33-34; see also Dispatch Notes, attached as Exhibits 4 & 5. The two traffic stops involving Mr. Pittman were dispatched as priority two calls. See Dispatch Notes, attached as Exhibits 6 & 7. The three traffic stops involving Mr. Falls were dispatched as priority two calls. See Dispatch Notes, attached as Exhibits 8, 9, & 10. Priority one calls, in part, are

"critical and in-progress," require "immediate police intervention to avert personal injury and property damage," or "prompt arrival is necessary to effect criminal apprehension." See APD Policy 8.4: Call Priority Designations, attached as Exhibit 3. Priority two calls, in part, are "urgent in nature requiring a quick police response," and "have a potential risk of personal injury." Exhibit 3. All these cases, involved traffic stops, for minor traffic offenses, when dispatch was contacted, and should've been priority three calls. Exhibit 3. This evidence, supports the proposition, that Aurora has a custom or practice of illegal searches and seizures.

In Plaintiff's case, the two traffic stops weren't isolated incidents, but are connected. Defendant Nichols was involved in both stops involving Plaintiff. The second stop, was initiated by Defendant Nichols, to do what didn't get done during the first stop; an illegal search and seizure of Plaintiff's vehicle. Doc. No. 6 p. 29. Defendant Sotelo was involved in the Diallo illegal search and seizure case. Id. at 100-105. Officer McElroy was involved in the April 3, 2019, illegal search and seizure of Mr. Pittman, and the September 17, 2019, illegal search and seizure of Mr. Falls. Exhibits 7 & 9. None of the APD officers involved these cases, has ever been disciplined or retrained. All the above cases, involve illegal searches and seizures. Therefore, the allegations are clearly sufficient, as a matter of pleading, to satisfy the "policy" or "custom" requirement of Monell, at this stage in the proceedings.

Date: 08/14/2020

Wyatt T. Handy Jr.

P. O. Box 221531

Denver, CO. 80222

## CERTIFICATE OF MAILING

I hereby certify that on this 14th day of AUGUST 2020,  A true and correct copy of the foregoing attached **RESPONSE TO DEFENDANTS' MOTION TO DISMISS** was deposited into the United States Mail, postage prepaid by First Class postage, addresseu to the following:

**UNITED STATES DISTRICT COURT**
**901 19th Street**
**Denver, CO 80294**

**Charles A. Piekarski**
**Aurora City Attorney's Office**
**15151 E. Alameda Parkway. Floor 5**
**Aurora, CO 80012-1555**

**Ann B. Smith**
**VAUGHAN & DeMURO**
**111 S. Tejon St. Suite 545**
**Colorado Springs, CO 80903**

By
W. T. Handy Jr.
P. O. Box 221531
Denver, Co. 80222